# SILAS LEES

## v.

## DRAINAGE COMMISSIONERS.

*Drainage—Legal Existence of District—Change of Boundaries—Statutes—Estoppel—Jurisdiction of Commissioners—Affidavits—Certiorari—Discretion.*

1. Under the Acts of 1879 and 1881, the boundaries of a drainage district might be changed by the commissioners without a change of the peti-

tion and without affidavits showing the existence of the jurisdictional facts required.

2.   Upon a writ of *certiorari* to test the legality of the organization of a drainage district, it is *held:* That said district may have been prop°rly organized and its boundaries subsequently changed by the commissioners, although the affidavits of two signers of the petition were not filed to show the jurisdictional facts required, Sec. 5 of the Act of 1879 being permissive and not mandatory; that Sec. 78 of the Act of 1885 legalized the acts and proceedings of the commissioners in establishing the district, informality alone being complained ot; and that appellant, as a signer of the petition, is estopped from questioning the legality of the organization of the district.

3.   The curative act of 1885 must be liberally construed to promote drainage and the reclaiming of wet and overflowed lands.

4.   The common law writ of *certiorari* is not a writ of right and whether it will be granted, especially as to a private person, is largely a matter of discretion.

[Opinion filed December 9, 1887.]

APPEAL from the Circuit Court of Kane County; the Hon. ISAAC G. WILSON, Judge, presiding.

Messrs. W. R. S. HUNTER and SHERWOOD & JONES, for appellant.

Messrs. HOPKINS, ALDRICH & THATCHER and J. A. RUSSELL, for appellees.

LACEY, J.   This was a writ of *certiorari* petitioned for originally by C. P. Wadley, Wilfred Reed, John Reed, Mary Barts, and William Wisher, against the appellees.  The petition was filed in the Circuit Court June 11, 1884, and an order made by the Circuit Judge to whom the application was made for a return, to be made by said commissioners at the next October term of the court.  No further action was taken in the premises until the October term, 1886, at which time the drainage commissioners, who were made parties in person, were stricken out by order of the court.  On the trial of the cause, in the court below, it appeared to the court that all the petitioners had released all the rights they may have had originally to question the legality of the drainage district by releasing the right of way over their respective lands, thereby

acknowledging the legal existence of the district.    Thereupon
counsel for the petitioners asked for and obtained leave to
amend their petition by inserting the name of appellant as co-
petitioner with the original petitioners.    On the hearing of
the cause the said petition was dismissed and judgment
rendered against the petitioners for costs.    To reverse this
judgment this appeal is taken.    The counsel for appellant
contends that there was no legal organization of the district
under the Act of 1879 and amendatory acts of 1881, and that
the curative clause of the statute on drainage of 1885 did not
validate the acts of the commissioners had under the former
acts.    One of the main points of objection that the appellant
brings to the record, is that it fails to show that the commis-
sioners had before them, on August 25, 1883, at their meeting
to consider the question of granting or rejecting the prayer of
the petition, the proper proof to show the jurisdictional facts
that " the persons whose names are signed to the petition are
a majority in number of all the adult owners of land in the
district, and that the signers owned more than one-third of the
land situate therein, and for that reason the record should
be quashed."    Sec. 5 of the Drainage Act of 1879 provides,
that it shall be the duty of the drainage commissioners to
meet at the time and place mentioned in the notice, etc., and
" that they shall thereupon proceed to ascertain whether the
said petition contains the signatures of a majority of the adult
persons owning land in said district, and that they are the
owners of more than one-third of the land situate in said
district, and the affidavits of two or more creditable signers of
said petition, that they have examined the same and are
acquainted with the locality of the district, and that they
believe that said petition is signed by a majority of the adult
owners of land in said district, and that said signers are owners
of more than one-third of the land in said district; and the
same may be taken as *prima facie* evidence of the facts set
forth in said petition as against the owners of land in said
district, and conclusive evidence against all persons signing
said petition, that they have accepted the provisions of this
act as to the assessment of benefits and damages thereunder."

In proceeding to ascertain the above facts required by the act, the record fails to show that the affidavits of two or more of the signers of the petition were taken by the commissioners as the said act provided might be done, but the commissioners made a finding of said facts as follows: "From examination, it appears to said commissioners, and they do so find, that the persons whose names are signed to the above named petition are a majority in number of the adult owners of land in said proposed district, and that the signers own more than one-third of the lands situate therein." Thereupon the commissioners " declared in favor of the drain and authorized E. O. Rood to confer with County Surveyor W. H. Pease, to survey and map the route of the same, and to report to an adjourned meeting of the board Saturday, September 8, 1883.

The point of the objection is that the record failing to show that two signers of the petition filed affidavits, the facts could not, under the provisions of the statute, be ascertained by the commissioners in any other way; that the statute should be regarded as imperative and mandatory and not directory or permissive merely; that these facts are jurisdictional, and without their being legally found, and so appearing by the record, the organization is illegal, and that the record should be quashed. This objection will be noticed farther on.

Another point of objection is as follows: The appellant further insists that the record shows that on the 22d day of September, 1883, to which day the meeting had been adjourned from September 8th, and to which meeting the county surveyor made his report, with his maps and estimates of the cost of the proposed drain, and on which day the final organization of the district was effected, and in which organization the commissioners changed the boundaries of the said district from those proposed in the original petition, so as to exclude 720 acres of land from and take in 600 acres to the district as it was finally organized, without amending the petition, that therefore counsel object that there is no record of any amendment to the petition or any new signers to the old one, and that there was no affidavit of two signers of the petition showing the existence of the jurisdictional facts as required by the act above recited.

Lees v. Drainage Commissioners.

Sec. 9 of the Act of 1881 provides for a change by the commissioners of the proposed drainage district from what the original petition may call for, and it is admitted by the appellant's counsel that such change may have been in this instance legally made, but he insists that there must be an amendment to the petition. We find no provision in the statute requiring that the petition must be changed or amended, and we do not think it necessary. When once the commissioners obtain jurisdiction by a petition, and have examined it and found it complies with the law, and orders in favor of the drain, they may change the boundaries of the district under Sec. 9. The commissioners have then acquired jurisdiction and may proceed to act, and no change in the petition is required. The maps of the surveyor and the final order of the commissioners conforming thereto, ordering the formation of the district by number, is sufficient to show the boundaries of the district. Sec. 9 provides that the commissioners " shall permit additional signatures to be made to the petition by any adult person or persons owning land in, or owning lands desired to be taken into such proposed district, to the end that a majority of the adult owners of land in the district, or as finally to be organized, and who shall be the owners in the aggregate of more than one-third of such land, shall be signers to the petition, which facts said commissioners shall find and put such finding in writing, and the same shall be signed, and the clerk shall enter the same in his record, which finding shall be conclusive." As far as the commissioners are concerned, they have no power to compel any one to sign the petition. That is a voluntary matter. The necessary jurisdictional facts may exist even after the change without any new signatures.

As to the point first made by the appellant, that the commissioners had no right to find "that the petition was signed by a majority of the adult owners of the land in the said district, and that the signers are owners of more than one-third of the land in the district" by any other means than from the affidavits of two of the petitioners, it is not well taken. The statute says such affidavits *may* be taken to establish such fact, not that they *shall* be. It is only one of the modes by which

the commissioners may be informed of the existence of those facts. They may ascertain them, for any provision in the statute to the contrary, by any means they think proper. . The commissioners, however, failed to enter any finding of record of the facts, at the time they made the final order establishing the district, as to the sufficiency in number of signers of the petition for the new district, as the statute required, but this is not complained of in appellant's brief, and we will not specially notice it, except generally, hereafter.

The next question arising, and which has been argued on both sides is, did Sec. 78 of the Drainage Act of 1885, legalize all the acts of the commissioners in establishing the district, whether irregular or not. That section of the Drainage Act of 1885 (Session Laws of 1885, page 107,) provides as follows: "The acts and proceedings done, and rights acquired under either of the foregoing acts, if in substantial conformity to law shall not be held to be void from merely technical informality of proceedings where no substantial rights of persons or property are adversely affected; and the same principles shall apply to this act. All drainage districts heretofore organized under any one or more of the acts hereby repealed shall be held and hereby are declared to be legally organized, and the assessments made therein shall be held to be legally made. This act, as well as the acts repealed, shall be liberally construed to promote drainage and the reclamation of wet and overflowed lands, and the making the assessments and taxes therefor." The acts under which these proceedings were had were repealed by the foregoing act from which the above section is taken, except as to proceedings under the old acts.

There can be no question that the appellee in this case was duly legalized as a drainage district under the above section, unless, perchance, some substantial right of appellant's property was affected by so doing. The points made are all technical in their character. The amendment of the petition after territory had been added, if required at all, the manner of proving the necessary facts to show that the requisite number of signers' names were attached to the petition, whether by the affidavit of two of the signers or otherwise, and the neces-

sity for the commissioners to preserve any proof at all either by their findings or the record of the same, were mere regulations of the former acts, and may be regarded as technical requirements. If the legislative act, in the first place, had not required those things to be done, the district could have been just as legally organized without them. The omissions complained of, if omissions they were, must be regarded as mere "technical informality of proceedings." One of the substantial rights under the former Drainage Act, may be, that there must have been, when the district was formed, at least a majority of all the adult owners of land in the district and owners of at least one-third of the land in the aggregate signing the petition, and in favor of the enterprise. This may have been, and probably was the case in this instance, though the record of the commissioners may not show it. In case the legal number of names was attached to the petition no substantial right in that particular is violated by legalizing the "acts and proceedings" done by the commissioners. *Prima facie,* at least, the organization is good. The record of it is legal and can not be attacked in a *certiorari* proceeding, where such question is alone tested by the record. It is only a technical rule of law that requires, in case of inferior tribunals, everything to be presumed against its record that does not affirmatively appear in it. A liberal construction at least, as we are compelled to give this curative act, would require us to hold that the record as a record is legalized in all cases where only informality is complained of. If there were not the requisite number of signers to the petition, and that fact is a substantial one of which appellant can complain, he ought for his remedy to be referred to some tribunal where he should take the affirmative. The policy of the law is, as declared by the act, "to promote drainage and the reclaiming of wet and overflowed lands and in the making and collection of assessments and taxes therefor." Can this be effectuated by declaring void districts created for such purpose on trifling technicalities?

We are also of the opinion, aside from the foregoing considerations, that the appellant is estopped from suing out this

writ of error. He was a signer of the petition and remained upon it until the district was fully organized, although by the act he might have taken his name from it. He must be regarded as knowing what was being done, an actor and promoter of the formation of the district and as agreeing to the irregularities. The statute under which the proceeding was had provides that "the signing of any petition referred to in this act, shall be taken as conclusive against the persons so signing that they have accepted the provisions of this act and of the act to which this is an amendment, as to assessments and benefits and damages therein." If the act is accepted and the assessments, benefits and damages are accepted, there is little more in pecuniary interest that the appellant has in the existence of the district; certainly he can not be injured by it—only benefited; and by the use of his name and influence in part the record he now complains of has been made.

The common law writ of *certiorari* is not a writ of right, and whether it will be granted or not, especially as to a private person, is largely a matter of discretion, although the discretion is not an arbitrary exercise of power. A person is estopped to insist on a writ of *certiorari* where he was a promoter of the making of the record, and from saying those things he caused to be performed are illegal and void. Board of Supervisors v. Magoon, 109 Ill. 142. Aside from the statutory estoppel against appellant, as a signer of the petition for the organization of the district and its legalization by the act of 1885, above-quoted, we are of the opinion that after promoting the formation of the district and accepting the benefits under the act, which the law conclusively presumes he did by the act of signing the petition, he can not even at common law in a proceeding by writ of *certiorari* be allowed to question the legality of the record organizing the district.

The judgment of the court below is therefore affirmed.

*Judgment affirmed.*